OLIVER B. WHITNEY *vs.* PETER P. SWENSEN.

May 28, 1890.

**Replevin against Sheriff for Property Levied on—Fraudulent Transfer.**
Certain alleged errors in the rulings of the court below upon the trial of this action examined and considered. *Held,* that none of said rulings were erroneous.

Appeal by defendant, sheriff of Hennepin county, from an order of the district court for that county, refusing a new trial after a trial before *Hicks,* J., and verdict for plaintiff for possession of the property, or for $975, its value, and for $45.62 damages for detention.

*Laybourn & McHugh,* for appellant.

*Torrance & Fletcher* and *J. K. Doolittle,* for respondent.

COLLINS, J. This is an action of claim and delivery, in which plaintiff had a verdict. The complaint was in the usual form, alleging that the plaintiff was the owner, and entitled to the immediate possession, of certain personal property, and that the same was unlawfully detained by the defendant. The answer denied these allegations, and averred that the property belonged to one D. R. Young, against whom a certain described judgment had been duly rendered and docketed; that an execution had been duly issued thereon, and placed in the hands of the defendant, who was the sheriff of the county in which the property was then situated, for service; and that by virtue of said execution the defendant, as sheriff, had seized and levied upon the property in question, and so held it when the action was brought. The answer further alleged that the property was in

v.43M—22

Young's possession when so levied upon; that the plaintiff was not the owner of the same, or of any part thereof; but that, with an intent to cheat and defraud the creditors of said Young, he pretended to own, and attempted to claim the right of possession of, said property. A proper reply was made, and a trial had, with the result above mentioned. The appellant has set out 39 assignments of error, many of which are of the same import, and most of which need no special examination. We shall consider only such as seem to us to need comment.

1. There is nothing in the point made by the appellant's counsel that the action of replevin or claim and delivery will not lie against an officer to recover possession of property seized by him by virtue of an execution. The right of a stranger to the process, as well as that of the execution debtor himself in case the property levied upon be exempt, is recognized by the statutes, (Gen. St. 1878, c. 65, § 89; c. 66, §§ 133, 154, 155;) and this method of determining rights as against an officer has never been questioned in this state before, so far as we are advised. It would be somewhat remarkable, and unfortunate for owner as well as a purchaser at an execution sale, if, as appellant strenuously contends, the owner of personal property, seized by an officer to satisfy a judgment against another person, cannot recover possession of his own until it has passed into the hands of a purchaser at the sale. The counsel have entirely misapplied the rule of law announced in the cases cited by them on this point.

2. Appellant justified under an execution against D. R. Young, alleging in his answer, among other things, that Young was the real owner of the property, and that respondent was not the owner of any part of it. It is now claimed by appellant that the testimony tended to show that respondent was not the absolute owner, but that Young had a leviable interest in the chattels which had been seized by virtue of the execution. The testimony discloses that plaintiff was the owner of seven lots which he had authorized Young to sell. One Howe owned the property in dispute,—a livery-stable outfit, occupying a leased barn. A trade between plaintiff and Howe was negotiated and brought about by Young, whereby plaintiff agreed to and did convey to Howe his lots, seven in number, in exchange for the livery

stock; the latter executing and delivering to plaintiff a bill of sale of the personalty, and at the same time surrendering possession thereof. Howe also assigned his lease of the barn to plaintiff, and the stock remained therein until seized under the execution, one Loomis having charge thereof as plaintiff's employe. Howe also testified upon the trial that, when the trade was first made, Young agreed to have conveyed to him, as part of the transaction, two lots then owned by one J. F. Young, a brother; that he (the witness) afterwards declined to accept a deed from J. F. Young; and that thereupon the trade was completed by a delivery of said deed, with D. R. Young's note for $500, into the hands of a third party, in pursuance of a written contract wherein it was agreed that both deed and note should be delivered to Howe on a certain day, unless D. R. Young should in the mean time obtain and deliver a conveyance of another designated lot from plaintiff to Howe. In such case the note and the deed should be redelivered to Young. The deed, the note, and the written contract under which they were deposited with the third party, were offered in evidence by the appellant, and, objection being made, excluded by the court. This ruling is assigned as error. In his answer, defendant had asserted that this plaintiff was not the owner of any part of the property levied upon by him; that the execution debtor, Young, was the owner thereof; and that it had been sold as his property at the execution sale. The respondent insists that appellant should not, in view of this answer, be permitted to change front, and upon the trial show that the debtor actually had an unascertained and undetermined interest in the horses and carriages by reason of having furnished a portion of the property exchanged therefor. It is unnecessary to pass upon this point, because there was no testimony received, and none offered, tending to show that, as against the plaintiff's assertion of exclusive ownership, Young had, or could have maintained, any claim whatever to an interest in the property. The bill of sale ran to plaintiff. Possession had been delivered to him. His employes had charge. He had not, either actively or passively, recognized Young as having an interest or any rights, and had done nothing which would prevent him from maintaining his claim of title as against the execution debtor, and conse-

quently as against the appellant sheriff. The only testimony indicating that plaintiff had any knowledge as to other property than his own having been considered in the trade, was that two lots owned by J. F. Young had been offered Howe. Certainly there was no evidence that plaintiff had ever heard of the written contract or the note deposited therewith. The ruling of the trial court on this point was correct.

3. A few days before the trade between plaintiff and Howe was actually consummated, but when it had been agreed upon, substantially, the former contracted to sell the entire property to E. V. Young, another brother of the judgment debtor, for the sum of $2,600, the payment thereof to be secured by an indorsement of one of the two notes which should be given by E. V. Young to plaintiff, and by a chattel mortgage. D. R. Young was given temporary possession of a bill of sale executed by plaintiff to the proposed purchaser, under circumstances narrated by plaintiff when upon the witness stand. The proposed sale to E. V. Young was not completed; but, while the aforesaid instrument was in the hands of D. R. Young, he exhibited it, and tried to sell the property as belonging to his brother. All of these facts were allowed to be shown in support of appellant's claim of fraud; but, aside from their existence, there was no testimony in any way indicating that the contemplated sale to E. V. Young was not, so far as it went, a *bona fide* transaction, or that, if it had been consummated according to the terms agreed on, the execution debtor would have acquired a leviable interest in the property. In the absence of proof, the jury could not have inferred to the contrary. And there is no rule of estoppel to be invoked here, as appellant contends, which can prevent the respondent from asserting title as against this undelivered bill of sale. Therefore the rulings of the trial court in regard to the knowledge which the judgment creditors had obtained of the existence and whereabouts of the bill of sale, and that, while it was in D. R. Young's hands, he had proposed to sell the property for E. V. Young, and that the creditors had acted upon this knowledge when directing a levy, were correct.

4. A witness for defendant, while testifying as to the value of the horses when seized, was asked by counsel whether horses were as.

valuable then as at the time of the trial. An objection to this question made by respondent was very properly sustained by the court on the ground of irrelevancy. Thereupon the appellant's counsel persistently followed the inquiry up with an offer to prove that at the time of the trial horses were worth more than when those in dispute were levied upon, and that one pair in particular, whose value had been fixed by plaintiff at $200, could "now" be bought for $60. In rejecting this offer the court used some rather vigorous language in regard to the conduct of counsel in putting the objectionable question, and in his efforts to introduce testimony of that character. The latter took an exception to the remarks of the court, and urges that they were prejudicial to appellant's case. In attempting to drag into the case an issue as to the value of horses when the levy was made, as compared with their value at the time of the trial, and again in offering to prove that the pair in question could be bought for $60 at the time of the trial, the counsel for appellant seem to have overlooked one of the principal rules of evidence,—that the testimony must be confined to the issue, must be relevant to the facts required to be proved. Here the issue was as to the value of these horses in September, not whether horses generally were worth more or less at that time than when the case was being tried, and not whether they could then be purchased for more or less than a certain sum. It was this departure from the rules of evidence which led the court to criticise the counsel. From the record in the case, it is clear to us that the court had been called upon to exercise a great deal of patience while counsel were examining into the details of the trade with Howe, and again while they wandered off into the particulars of other and distinct transactions between these parties and other persons. While recognizing the fact that counsel should be protected from prejudicial assaults of the courts, we cannot say in this instance that the remarks were wholly without warrant, or that the appellant's case was thereby prejudiced.

5. The remaining assignments of error are without merit.

Order affirmed.